**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| WESTLEY VANCE HASKINS, | CV 05-2352-PHX MHM (JM) |
| Petitioner, | **ORDER** |
| vs. | |
| DORA SCHRIRO, Director, Arizona Department of Corrections, | |
| Respondent. | |

Currently before the Court are Petitioner's Motion to Stay (Dkt. #53), Petitioner's Motion to Amend Writ of Habeas Corpus (Dkt. #61), and Magistrate Judge Jacqueline Marshall's accompanying Report and Recommendation (Dkt. #67).

**I.  STANDARD OF REVIEW**

A district court must review the legal analysis in a Magistrate Judge's Report and Recommendation *de novo*. See 28 U.S.C. § 636(b)(1)(C). In addition, a district court must review the factual analysis in the Report and Recommendation *de novo* for those facts to which objections are filed. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); see also 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). "Failure to object to a magistrate judge's recommendation waives all objections to the judge's findings of fact." Jones v. Wood, 207 F.3d 557, 562 n. 2 (9th Cir. 2000).

## II. PROCEDURAL HISTORY

Petitioner Westley Haskins filed a Petition for Habeas Corpus pursuant to 28 U.S.C. § 2254 on August 4, 2005. (Dkt. #1). The matter was referred to Magistrate Judge Jacqueline Marshall for Report and Recommendation on June 21, 2006. (Dkt. #3). On May 5, 2008, following Respondent's Answer (Dkt. #18) and Petitioner's Motion to Conduct Limited Discovery (Dkt. #26), Magistrate Judge Marshall filed her Report and Recommendation that the Court deny the Petition for Writ of Habeas Corpus (Dkt. #35).

Petitioner then filed Objections to the Report and Recommendation, raising new allegations of a Brady violation for failure to disclose felony convictions of state witnesses and factual innocence with respect to his state conviction on one count of child abuse. (Dkt. #37). In addition, Petitioner filed a Motion for a Procedural Order to authorize Petitioner to use his personal typewriter to prepare documents with respect to this litigation due to his diagnosis of osteoarthritis and degenerative joint disease (Dkt. #36). Petitioner also filed a Motion to Stay Habeas Corpus Proceedings Pending Appeal (Dkt. #41).

On September 16, 2008, the Court adopted Magistrate Judge Marshall's Report and Recommendation in part, denying both Petitioner's Motion to Conduct Limited Discovery and Petitioner's due process claim with respect to the Arizona Court of Appeal's refusal to remand, and granting Petitioner's unopposed Motion for a Procedural Order. (Dkt. #44). The Court withheld ruling on the remainder of Judge Marshall's Report and Recommendation and directed Respondents to address Petitioner's newly-raised allegations, including whether those allegations are sufficient to warrant granting Petitioner's Motion to Stay. Id. The Court requested a supplemental Report and Recommendation from Judge Marshall on the merits of Petitioner's Motion to Stay. Id.

On September 19, 2008, Respondents requested that the Court stay the Order granting Petitioner's Motion for Procedural Order to use his personal typewriter pending an Objection by the Arizona Department of Corrections. (Dkt. #45). The Court granted that Motion on

September 26, 2008. (Dkt. #47). The Department of Corrections filed their Objection on October 27, 2008[1]. (Dkt. #48)

Respondents filed their response to Petitioner's newly-raised allegations of factual innocence and a <u>Brady</u> violation on October 31, 2008. (Dkt. #49). On December 5, 2008, Petitioner filed a Reply to that Response, a second Motion to Stay pending adjudication of Petitioner's unexhausted claims in state court, and a Reply to the Department of Correction's Objection to Petitioner's Motion for Procedural Order. (Dkt. #s 52-54).

After reviewing Respondents' Response to Petitioner's newly-raised allegations, the Court ordered Respondents to file a supplement brief addressing whether the Court should allow Petitioner to amend his Petition to state his alleged <u>Brady</u> violation as a free-standing claim and/or state a claim for ineffective assistance of counsel for failure to investigate the presence of drugs in Petitioner's daughter's system. (Dkt. #55). The Court also directed Respondents to address whether Petitioner would be entitled to a stay to present his claims to the state courts per <u>Rhines v. Weber</u>, 544 U.S. 269, 277 (2005). Respondents filed their supplemental response on January 12, 2009 (Dkt. #59), and Petitioner filed a Reply on January 23, 2009 (Dkt. #62).

On December 12, 2008, Magistrate Judge Marshall issued a Report and Recommendation that the Court deny Petitioner's original Motion to Stay Habeas Corpus Proceedings Pending Appeal. (Dkt. #41). Petitioner filed an Objection on January 21, 2009. (Dkt. #60). Then, on January 23, 2009, Petitioner filed a Motion to Amend Writ of Habeas Corpus. (Dkt. #61).

On February 11, 2009, the Court adopted Magistrate Judge Marshall's Report and Recommendation denying Petitioner's first Motion To Stay. (Dkt. # 64). The Court further ordered U.S. Magistrate Judge Jacqueline Marshall to issue a Report and Recommendation concerning the motions that remained pending in this action: (1) the Arizona Department of

---

[1] While this Court has referred to the document filed at Dkt. # 48 as an "Objection," it is in fact captioned as a "Response."

Corrections's Objection to the Court's granting Petitioner's Motion for a Procedural Order (Dkt. # 48), (2) Petitioner's Motion to Stay (Dkt. # 53), and (3) Petitioner's Motion to Amend Writ of Habeas Corpus (Dkt. #61). The Court also requested that Judge Marshall report on whether the Court's decision to withhold ruling in part on her initial Report and Recommendation (Dkt. #44) should be deemed moot as a result of Petitioner's Motion to Amend.

On August 8, 2009, Magistrate Judge Marshall issued a Report and Recommendation denying Petitioner's Motion to Stay and his Motion to Amend Writ of Habeas Corpus, and denying as moot Arizona Department of Corrections' Objection to the Court's granting Petitioner's Motion for a Procedural Order (Dkt. #67). On September 10, 2009, this Court, concerned that Petitioner, due to a change of address, had not received the Report & Recommendation, directed the Clerk of the Court to resend the Report and Recommendation to the Petitioner, and ordered that Petitioner and Respondent file any objections to the Report and Recommendation within ten days. (Dkt. #69) Petitioner filed an objection to the Report and Recommendation on September 21, 2009. (Dkt. #70)

## III. DISCUSSION

### A. Motion to Amend

In his Motion to Amend Writ of Habeas Corpus, Petitioner prays this Court allow him to amend his original habeas petition to include a claim predicated on Brady v. Maryland, 373 U.S. 83 (1963), alleging that the State failed to disclose the criminal backgrounds of two witnesses that testified against him at trial. (Dkt. #67, p.1). Petitioner also wishes to amend his petition to include an ineffective assistance of counsel claim based on his counsel's failure to raise this Brady claim on appeal. Id. Finally, in his objections to a previously filed Report and Recommendation, as well as the instant one, Petitioner suggests that counsel performed ineffectively by failing to independently test and investigate the state's assertions concerning the presence of methamphetamine in his daughter's system. Id. at 2.

The civil rules governing amendments are applicable to habeas cases. Mayle v. Felix, 545 U.S. 644, 659 (2005). Under these rules, "[b]efore a responsive pleading is served, pleadings may be amended once as a "matter of course," i.e., without seeking court leave." Id. After the responsive pleading has been served, amendments may be made at any time during a proceeding with leave of the court. Id. However, in Mayle the Supreme Court constrained district courts' discretion concerning the amendment of habeas petitions. It held that after the one-year statute of limitations for filing a habeas petition imposed by the Antiterrorism and Effective Death Penalty Act (AEDPA) has run, proposed amendments must relate back to the claims plead in the original habeas petition. Id; 28 U.S.C. § 2244(d).

### 1. Statutory Tolling

The State has responded to Petitioner's habeas petition. (Dkt. #18). Accordingly, Petitioner may no longer amend his petition without leave of this Court. As a preliminary issue, then, this Court must determine whether its discretion is constrained by the requirements of AEDPA. Under AEDPA, the one-year tolling period runs from the latest of: (1) the date on which the judgement became final; (2) the date on which a state-created impediment from filing has been removed; (3) the date on which the constitutional right asserted was recognized by the Supreme Court; and (4) the date on which the factual predicate of the claim or claims presented could have been discovered through due diligence. 28 U.S.C. § 2244(d)(1)(A)–(D)

Petitioner's appeal for statutory tolling appears to be predicated on his discovery of new evidence; evidence that is the factual predicate of his claims. The evidence proffered by Petitioner is: (1) the criminal backgrounds of two witnesses at his trial; and (2) a report concerning the urine and blood testing of Petitioner's daughter, which calls into question the conclusions of the state lab concerning the amount of methamphetamine in her system. (Dkt. 61, p.2–3). Magistrate Judge Marshall concluded that in discovering this evidence Petitioner did not exhibit the requisite diligence. (Dkt. #67, p.5) Petitioner objects to this determination, arguing that at trial his attorney repeatedly requested the state produce

- 5 -

criminal background reports on the witnesses in question, (Dkt. #70, p.5), and that he repeatedly asked both trial and appellate counsel to order an independent laboratory test of his daughters blood and urine. Id. at 5.

With respect to the criminal-background evidence, the Court agrees with the conclusions reached by the magistrate. Petitioner is correct, the record does not contain direct evidence that the State turned witness Francis Smith's known arrest history over to Petitioner. The trial transcript shows, however, that trial counsel raised and established Mr. Smith's felony record during cross-examination. (Dkt. #59, ex. U, p.117–119). Thus, even if the state did not turn over a prior conviction history, Petitioner was clearly on notice that such evidence existed or may have existed. Given these facts, the Court believes that Petitioner could have secured this evidence sometime during the four years that passed between his conviction and the filing of his habeas petition. Accordingly, this Court agrees with the Magistrate that "even if the facts underlying the proposed new claim[] w[as] discovered after trial, Petitioner was not dilligent in securing them." (Dkt. #70, p.8).

In support of his other new claim for ineffective assistance of counsel, Petitioner has provided the Court with a report by Ed French, who appears to be a faculty member in the Department of Pharmacology at the University of Arizona, that questions the conclusions and questions the methodology of Southwest Laboratories, the laboratory hired by the State to conduct the analysis of Petitioner's daughter's blood and urine. (Dkt. #26, ex.1). Petitioner argues he acted diligently in securing this evidence, as "new scientific methods have been brought forth and were not discovered until the National Academy of Sciences issued its research regarding Forensic Analysis well after the filing of this action." (Dkt. #70, p.8). The Court is sympathetic to Plaintiff's claim that his lawyers rebuffed efforts to secure such testing earlier, by telling him he did "'not know the law' and was not a 'trained professional.'" Id. The fact, however, that Plaintiff ultimately procured such testing on his own suggests that he may have been able to secure the testing earlier, and therefore did not exercise sufficient diligence.

Ultimately, however, the Court need not reach a definitive conclusion concerning Petitioner's diligence in discovering this evidence. Assuming, *arguendo*, that Plaintiff's evidence constitutes a new factual predicate for the purposes of AEDPA, 28 U.S.C. § 2244(d)(1)(D), Plaintiff did not file his Motion to Amend within the one year statute of limitation provided therein. Plaintiff first brought the evidence in question to the Court's attention in a filing made on December 28, 2007. See (Dkt. #26, ex.1(Ed French's Report)); Id. at ex. 5–8 (the criminal histories of Francis Smith and Leslie Donald Ray). Assuming further that the date on which this evidence could have been discovered through due diligence was the same as the date on which it was filed, Petitioner would have needed to file his Motion to Amend by December 28, 2008. Petitioner filed the instant Motion to Stay on December 5, 2009, but, importantly, did not file his pending Motion to Amend until January 23, 2009; one year and twenty-six days after the latest possible time this Court could find the statute began to run again.

Therefore, for purposes of this action, the statute of limitations began to run from the date on which Petitioner's judgment became final by the conclusion of direct review or the expiration of the time for seeking review. Id.; (Dkt. #67, p.3). In this case, however, Petitioner did not avail himself of state-post conviction procedures. Accordingly, Petitioner's conviction became final on March April 5, 2005, 90 days after the Arizona Supreme Court denied Petitioner's petition for review of the trial court's dismissal of his direct appeal on January 5, 2005[2]. Id.; see Bowen v. Roe, 188 F.3d 1157 (9th Cir. 1999) (statute of limitations does not begin to run until close of ninety-day period within which petitioner could have filed a petition for writ of certiorari from the United States Supreme Court).

---

[2]In his Objections to the Report and Recommendation, Petitioner appears to read the Magistrate's Report and Recommendation, however, as suggesting that he failed to file his federal habeas within the one year statute of limitations period. (Dkt. #70, p.2–3). This is incorrect. It is undisputed that petitioner timely filed his federal habeas petition on August 4, 2005 (Dkt. #1). Instead, the Magistrate Judge's discussion of timeliness and AEDPA's one-year statute of limitations served only to demonstrate that Petitioner is no longer free to amend his habeas petition without showing that the newly proposed claims "relate back" to the claims raised in his original timely petition. (Dkt. #67, p.3)

- 7 -

Accordingly, this Court has no choice but to find that Petitioner is not entitled to statutory tolling.

### 2. **Equitable Tolling**

Having found that Petitioner is not entitled to statutory tolling , the Court must now consider whether Petitioner is entitled to equitable tolling. Equitable tolling is available only when "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." Calderon v. U.S. Dist. Ct. (Kelly), 163 F.3d 530, 541 (9th Cir.1998). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir.1999). Under AEDPA, "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002). Accordingly, cases in which the Ninth Circuit has found extraordinary circumstances are rare and generally limited to those in which a serious mistake by a government official, counsel, or court prejudices the plaintiff. See e.g., Harris v. Carter, 515 F.3d 1051, 1054–57 (9th Cir. 2008) (petitioner entitled to equitable tolling because he relied on the Ninth Circuit's legally erroneous holding in determining when to file a federal habeas petition); Corjasso v. Ayers, 278 F.3d 874, 877–79 (9th Cir. 2002) (equitable tolling warranted where district court mishandles a petition causing it to be untimely).

The Magistrate recommended that equitable tolling not be applied in this case. (Dkt. #67, p.5–6). Petitioner objects, arguing that he pursued his rights diligently throughout, but his attorneys thwarted these efforts by failing to raise the issues and conduct the investigations he requested. (Dkt. #70, p.8). Petitioner argues that this diligence, combined with "the extraordinary circumstance of both obtaining scientific information and attempting to retain a competent counsel to take on these issues" justifies equitable tolling. Id. Mindful of the difficulties faced by Plaintiff, this Court does not believe that the circumstances

presented by Petitioner rise to the level of the extraordinary. Therefore, equitable tolling is not justified in this case.

### 3. Relation Back

Because the statute of limitations has run, this Court must ask whether Petitioner's proposed amendments relate back to the claims in his original petition. Mayle v. Felix, 545 U.S. 644, 659 (2005). "An amendment of a pleading relates back to the date of the original pleading when ... the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." FED.R.CIV.PRO. 15(c)(2). An amended habeas petition, "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle, 545 U.S. at 649. Additionally, in Mayle the Supreme Court rejected the notion that the trial itself constitutes the same transaction or occurrence for the purposes of the relates-back test: "If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance." Id. at 662.

In his original habeas filing, Petitioner plead four grounds for relief: (1) a due process violation stemming from exclusion of defense witnesses; (2) Ineffective Assistance of Counsel (IAC) from counsel's failure to timely disclose defense witnesses; (3) Ineffective Assistance of Counsel from counsel's failure to interview defense witnesses; and (4) a Due process violation stemming from the Arizona Court of Appeals' failure to remand his case to trial court in light of Wiggins v. Smith, 539 U.S. 510 (2003). (Dkt. #1). Petitioner objects to the Magistrate's finding that his new claims do not relate back to any of the four contained in his original petition. (Dkt. #70, p.3–4). This Court, like the Magistrate Judge, does not believe that Plaintiff's newly proposed Brady and IAC claims relate back to his original claims.

The Brady claim is clearly a new ground for relief. It is supported by different facts, both in time and type, then those supporting Petitioner's other claims, as it implicates prosecutorial conduct, whereas the original claims focus on the actions of trial counsel and the trial-court judge. As to his new IAC claims, Petitioner argues they relate back because his habeas petition contained two other IAC claims.. (Dkt. #70, at 4). The Court must reject this argument. Petitioner's new allegations of IAC are unrelated to either of his other IAC allegations. The only relationship between these claims is their accusation of ineffectiveness. Though they may share a common legal theory, they implicate a different set of operative facts, arising out of different instances of conduct. See Mandacina v. U.S., 328 F.3d 995, 1002 (8th Cir. 2003) (finding that petitioner's new claim of IAC was different in time and type from the ten counts of IAC alleged in his original petition). Accordingly, this Court must find that Plaintiff's new claims do not relate back to those found in his original petition.

### B. Motion For a Stay

In the Report and Recommendation, Magistrate Marshal analyzed Petitioner's Motion for a Stay under the rubric of Rhines v. Weber. 544 U.S. 269 (2205) Under Rhines, in limited circumstances, a federal district court has the discretion to stay a *mixed habeas petition* containing exhausted and unexhausted claims to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then return to federal court for review of his perfected petition. 544 U.S. 269. Because this Court has already decided that Petitioner may not amend his habeas petition, his petition is not mixed, and the Rhines analysis is inapplicable.

Instead, should this court decide to grant a stay, it must do so pursuant to Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003). Under the Kelly three-step procedure (1) a petitioner amends his petition to delete any unexhausted claims; (2) the court stays and holds in abeyance the amended, fully exhausted petition, allowing the petitioner the opportunity to proceed to state court to exhaust the deleted claims; and (3) the petitioner later amends his petition and re-attaches the newly-exhausted claims to the original petition. King v. Ryan,

564 F.3d 1133, 1135 (9th Cir. 2009) (citing Kelly, 315 F.3d at 1070–71)." The Rhines and Kelly approaches are distinct because "Rhines applies to stays of mixed petitions, whereas the three-step [Kelly] procedure applies to stays of *fully exhausted petitions*." Jackson v. Roe, 425 F.3d 654 (9th Cir. 2005); see also King, 564 F.3d at 1140 ("[T]he three-step procedure outlined in Kelly allows the stay of *fully exhausted* petitions)." Additionally, unlike a stay predicated on Rhines, a Kelly stay "does nothing to protect a petitioner's unexhausted claims from untimeliness in the interim." King, 564 F.3d at 1141.

This Court acknowledges that Petitioner did not start on the same procedural ground as the normal Kelly petitioner; with a mixed petition. Petitioner is, however, in the same procedural posture as any Kelly-petitioner that has taken step-one; he possesses a fully exhausted habeas claim and prays that the Court grant a stay. Accordingly, the Court believes the rules governing Kelly apply in the instant case. And, when faced with a fully exhausted petition at Kelly step-two, a district court still retains discretion concerning whether or not to grant a stay. Kelly, 315 F.3d at 1070. A stay is clearly appropriate when declining to do so would cause otherwise valid claims to be forfeited. Id. Conversely, the Ninth Circuit also recognizes that a Court may properly deny staying an exhausted habeas petition when Mayle's relation-back requirement would prevent the petitioner from ever successfully amending his claim. King, 564 F.3d. at 1141–2. In King, the Ninth Circuit upheld a district court's decision not to grant a Kelly-stay where that court did not believe "that any of petitioner's unexhausted claims would relate back to the date of petitioner's original filing," as required by Mayle. Id. at 1142.

This Court has already concluded in this Order that Petitioner's unexhausted claims do not relate back to the claims made in his original petition. Therefore, granting Petitioner's Motion for a Stay could never lead to him eventually being permitted to amend his habeas petition to include these new claims. Accordingly, this Court, following the logic set forth in King, declines to exercise its discretion to grant a stay, as doing so would only result in unnecessary delay in adjudicating the claims properly before this court.

### C. The Previous Report and Recommendation

In a previous Report and Recommendation, Magistrate Judge Marshall concluded that Petitioner's habeas petition should be dismissed. (Dkt. #37). In an a subsequent Order, this Court, conducting a *de novo* review of the Report and Recommendation, reached the same conclusion concerning Petitioner's habeas petition. (Dkt. #44). In order to give full consideration to Petitioner's Motion for a Stay, however, this Court abstained from fully adopting Magistrate Marshall's previous Report and Recommendation. Id. Now that the Court has fully addressed Petitioner's Motion for a Stay and Motion to Amend, and dismissed them, the Court no longer has reason for withholding final action on Petitioner's habeas petition.

**Accordingly,**

**IT IS HEREBY ORDERED** adopting the Magistrate Judge Marshall's Report and Recommendation (Dkt. #67) to the extent it is consistent with this Order.

**IT IS FURTHER ORDERED** denying Petitioner's Motion to Stay (Dkt. #53)

**IT IS FURTHER ORDERED** denying Petitioner's Motion to Amend Writ of Habeas Corpus (Dkt. #61)

**IT IS FURTHER ORDERED** denying as moot Arizona Department of Corrections' Objection to the Court's granting Petitioner's Motion for a Procedural Order (Dkt.# 48).

**IT IS FURTHER ORDERED** adopting in full Magistrate Judge's Marshall's previous Report and Recommendation (Dkt. #37) to the extent it is consistent with the Court's Order conducting a *de novo* review (Dkt. #44).

/ / /

**IT IS FURTHER ORDERED** denying Petitioners's habeas petition (Dkt. #1).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to close this case.

DATED this 30th day of September, 2009

_____
Mary H. Murguia
United States District Judge